CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
March 06, 2026
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | | |
|---|---|---|
| LLOYD W., | ) | |
| Plaintiff, | ) | Civil Action No. 3:24-cv-00084 |
| | ) | |
| v. | ) | REPORT & RECOMMENDATION |
| | ) | |
| FRANK BISIGNANO, | ) | By:  Joel C. Hoppe |
| Commissioner of Social Security, | ) | United States Magistrate Judge |
| Defendant. | ) | |

Plaintiff Lloyd W. asks this Court to review the Commissioner of Social Security's final decision denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401–434. ECF No. 1. The case is before me by referral under 28 U.S.C. § 636(b)(1)(B). Having considered the administrative record ("R."), ECF No. 5, the parties' briefs, ECF Nos. 12, 14, 15, and the applicable law, I find that the decision is not supported by substantial evidence because the Administrative Law Judge ("ALJ") did not adequately explain how she considered the supportability and consistency factors, 20 C.F.R. § 404.1520c(b)(2), when evaluating the opinions of Lloyd's primary care provider, R. 36–37 (citing R. 357–60). Accordingly, I respectfully recommend that the presiding District Judge reverse the Commissioner's final decision and remand Lloyd's case under the fourth sentence of 42 U.S.C. § 405(g).

I. Standard of Review

The Social Security Act authorizes this Court to review the Commissioner's final decision that a person is not entitled to disability benefits. 42 U.S.C. § 405(g); *see Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). The Court's role, however, is limited—it may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of agency officials. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Instead, a court

reviewing the merits of the Commissioner's final decision asks only whether the ALJ applied the correct legal standards and whether substantial evidence in the existing record supports the ALJ's factual findings. *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011); *see Riley v. Apfel*, 88 F. Supp. 2d 572, 576 (W.D. Va. 2000) (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 98–100 (1991)).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla" of evidence, *id.*, but not necessarily "a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). *See Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019). Substantial-evidence review considers the entire record and not just the evidence cited by the ALJ. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–89 (1951); *Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984). Ultimately, a court must affirm the ALJ's factual findings if "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

## II. The Legal Framework

A person is "disabled" within the meaning of the Social Security Act if he or she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Social Security ALJs follow a five-step process to determine if a claimant is disabled. The ALJ asks, in sequence, whether the claimant (1) is working; (2) has a severe

impairment that satisfies the Act's duration requirement; (3) has an impairment that meets or equals an impairment listed in the Act's regulations; (4) can return to his or her past relevant work based on his or her residual functional capacity; and, if not (5) whether he or she can perform other work. *See Heckler v. Campbell*, 461 U.S. 458, 460–62 (1983); *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017); 20 C.F.R. § 404.1520(a)(4).

The claimant bears the burden of proof through step four. *Lewis*, 858 F.3d at 861. "At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." *Mascio v. Colvin*, 780 F.3d 632, 635 (4th Cir. 2015) (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429); *accord* 20 C.F.R. §§ 404.1520, 404.1560, 404.929. "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations" and vocational factors. *Mascio*, 780 F.3d at 635; *see Britt v. Saul*, 860 F. App'x 256, 263 (4th Cir. 2021) (citing *Mascio*, 780 F.3d at 636–37); *Jolly v. Barnhart*, 465 F. Supp. 2d 498, 504–05 (D.S.C. 2006). "If the Commissioner meets [this] burden, the ALJ finds the claimant not disabled and denies the application for benefits." *Mascio*, 780 F.3d at 635.

### III. Procedural Background

Lloyd applied for DIB in September 2021. *See* R. 79, 187–88. He alleged that he had been disabled since November 19, 2019, because of post-traumatic stress disorder, anxiety, depression, arthritis, gout, status-post knee surgery, high blood pressure, kidney disease, migraines, and sciatica. *See* R. 80, 187, 219. Lloyd was 54 years old, or a "person closely approaching advanced age" under the regulations, on his alleged onset date. R. 80; 20 C.F.R. §

3

404.1563(d). On his 55th birthday, he moved into the "person closely approaching advanced age" category. *See* R. 80, 20 C.F.R. § 404.1563(e). Virginia Disability Determination Services ("DDS") denied Lloyd's claim on initial review in May 2022, R. 79, and on reconsideration in June 2022, R. 98. On August 8, 2023, Lloyd appeared with counsel and testified at a hearing before ALJ H. Munday. R. 60–74. A vocational expert ("VE") also testified. R. 74–77.

On November 1, 2023, ALJ Munday issued an unfavorable decision. R. 11–38. At step one, she found that Lloyd had not engaged in substantial gainful activity since November 19, 2019, except for a period from January 2020 through May 2020. R. 13. Her "remaining findings address[ed] the period(s)" when Lloyd was not working. *See* R. 13. At step two, she found that Lloyd had severe medically determinable impairments ("MDIs") of degenerative disc disease, knee osteoarthritis, gout, migraines, hypertension, chronic kidney disease, and obesity. R. 13. At step three, she found that Lloyd's severe MDIs did not meet or medically equal a relevant Listing. R. 19–22 (citing 20 C.F.R. pt. 404, subpt. P, app. 1 §§ 1.15, 1.18, 4.00, 6.09, 11.02, 14.09).

ALJ Munday then assessed Lloyd's residual functional capacity ("RFC")[1] based on the medical and other evidence in the record. *See* R. 22–37. She found that Lloyd could perform "light work"[2] as defined by regulation except

---

[1] RFC is the claimant's "maximum remaining ability to do sustained work activities in an ordinary work setting" for eight hours a day, five days a week despite his or her medical impairments and symptoms. SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (emphasis omitted). It is a holistic factual finding "made by the [ALJ] based on all the relevant evidence in the case record," *Felton-Miller v. Astrue*, 459 F. App'x 226, 230–31 (4th Cir. 2011) (per curiam), including clinical findings, medical opinions, and the claimant's own statements, 20 C.F.R. § 416.945. *See Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017). The ALJ's ultimate RFC finding, 20 C.F.R. § 404.1520(e), must "include those [functional] limitations that the ALJ considers credibly established" by relevant evidence in the record, *Bryant v. Colvin*, No. 3:13cv349, 2014 WL 896983, at *1, *12 (E.D. Va. Mar. 6, 2014). *See Monroe v. Colvin*, 826 F.3d 176, 179, 188 (4th Cir. 2016).

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). "[T]he full range of light work requires

4

standing/walking four hours in an eight-hour workday; occasionally stooping, kneeling, crouching, crawling, and climbing ramps or stairs; no climbing ladders, ropes, or scaffolds; occasional exposure to vibrations; frequent exposure to pulmonary irritants, including fumes, odors, dust, and gas; and occasional exposure to hazardous conditions, including unprotected heights and moving machinery.

R. 22.

At step four, ALJ Munday found that Lloyd had past relevant work including "mortgage loan processor (DOT #249.362-022)." R. 37 (citing R. 209, 251). She credited the VE's testimony that this job was "sedentary in exertion."[3] R. 37 (citing R. 75). She also credited the VE's testimony that Lloyd's RFC allowed him to "perform his former job as a mortgage loan processor as generally performed in the national economy and as actually performed by [Lloyd]." R. 37–38 (citing R. 76). Accordingly, ALJ Munday found that Lloyd was not disabled from November 19, 2019, through November 1, 2023.[4] R. 38. The Appeals Counsel denied Lloyd's request for review, R. 1–3, making the ALJ's decision the final decision of the Commissioner. This appeal followed.

IV. Discussion

---

standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time." SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983); *see Neal v. Astrue*, Civ. No. 09-2316, 2010 WL 1759582, at *2 (D. Md. Apr. 29, 2010). Someone who "can do light work . . . can also do sedentary work, unless additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying [objects] like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a). Sedentary jobs involve sitting most of the time and "occasionally" being on one's feet. *Id.* "[P]eriods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *5.

[4] ALJ Munday did not make any findings about Lloyd's vocational factors of age, education, and acquired or transferable work skills. R. 37–38; *see generally* 20 C.F.R. §§ 404.1560, 404.1563, 404.1564, 404.1565, 404.1568. Nor did she evaluate whether, assuming Lloyd could not go back to his job as a mortgage loan processor, he nonetheless could have adjusted to other work existing in the national economy considering his RFC and vocational factors. R. 37–38; *see* 20 C.F.R. pt. 404, subpt P, app. 2 §§ 201.00, 202.00.

On appeal, Lloyd argues that ALJ Munday did not properly evaluate a medical source statement completed by his primary care provider, Shanthi Tatineni, M.D.[5] *See* Pl.'s Br. 8. Lloyd focuses on Dr. Tatineni's medical opinion that his impairments limit him to work that "permits shifting positions at will from sitting, standing, or walking" ("sit-stand limitation").[6] *Id.* at 3 (citing R. 358); *see also id.* at 8, 10. ALJ Munday implicitly rejected this limitation by failing to include it in her RFC finding. *See id.* at 6 (citing R. 36); *see, e.g.*, *Sandra W. v. Kijakazi*, No. 7:20cv683, 2022 WL 545075, at *5 (W.D. Va. Feb. 23, 2022) (noting than an ALJ "implicitly rejects" a proposed limitation by "failing to incorporate" it into the RFC finding); SSR 96-8p, 1996 WL 374184, at *7 ("If the RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted."). Lloyd contends that the ALJ did not adequately explain how she considered the supportability and consistency of Dr. Tatineni's opined sit-stand limitation, *see id.* at 6 (citing 20 C.F.R. § 404.1520c(b)(2)), and that the ALJ's evaluation was so unclear, contradictory, and selective in its review of the record evidence as to frustrate meaningful judicial review, *see id.* at 7 (citing *Mascio*, 780 F.3d at 636); *id.* at 8–10 (citing *Lewis*, 858 F.3d at 869). He argues that ALJ Munday's "improper rejection of Dr. Tatineni's opinion results in harmful error" because the ALJ relied on the VE's testimony for her step-four conclusion that Lloyd could return to his past work, but "none of the hypothetical

---

[5] Lloyd also argues that ALJ Munday did not adequately account for his severe MDI of migraines in her RFC finding. *See* Pl.'s Br. 11–14. Because the Court finds remand appropriate based on the ALJ's improper evaluation of Dr. Tatineni's medical opinion, it does not address this argument.

[6] "A limitation that prevents a claimant from either sitting or standing for long periods, but permits a claimant to sit or stand, in total, long enough to endure an eight-hour work day, is known as a 'sit-stand' limitation." *Johnson v. Colvin*, No. 4:15cv133, 2016 WL 5338530, at *7 (E.D.N.C. Sept. 23, 2016) (citing *Golini v. Astrue*, 483 F. App'x 806, 807 (4th Cir. 2012); SSR 83-12, 1983 WL 31253, at *4 (Jan. 1, 1983)). The claimant's RFC should include a sit-stand limitation if such restriction is credibly established by relevant evidence in the record. *See* SSR 83-12, 1983 WL 31253, at *4.

questions given to the VE included . . . [a] need to alternate sitting, standing, and walking at will." *Id.* at 10 (citing R. 76–77). Accordingly, Lloyd asks this Court to reverse and remand the decision for further proceedings. *See id.* at 11.

The Commissioner responds that ALJ Munday's evaluation was sufficient because she "applied the appropriate supportability and consistency analysis" and found as a general matter that Dr. Tatineni's "opinions were not persuasive [because] 'they are not supported by Dr. Tatineni's own contemporaneous treatment visits and are not consistent with the overall objective medical evidence.'" Def.'s Br. 11 (quoting R. 37); *see id.* at 12 ("[Lloyd] has not cited evidence in the record which undermines the ALJ's general conclusion that Dr. Tatineni's opined limitations were greater than one would expect based on the record."). The Commissioner also argues that the ALJ's decision must be read "as a whole," *id.* at 12 (quoting *Keene v. Berryhill*, 732 F. App'x 174, 177 (4th Cir. 2018)), and that the ALJ's "lengthy" summary of medical records, including both "positive and negative findings," shows that the ALJ sufficiently considered the relevant evidence in rejecting Dr. Tatineni's opinions, *id.* (citing R. 29–30).

A.    *Legal Standard*

"A medical opinion is a statement from a medical source about what [the claimant] can still do despite [his] impairments and whether [he has] one or more impairment-related limitations or restrictions" in meeting specific functional demands of work. *See* 20 C.F.R. § 404.1513(a)(2). ALJs "will consider" the persuasiveness of a medical source's opinions using five factors: (1) supportability, (2) consistency, (3) the medical source's relationship with the claimant, (4) the medical source's specialization, and (5) other relevant factors, like the medical source's familiarity with other evidence in the record or Social Security Administration disability program policies. *Id.* § 404.1520c(a), (c)(1)–(5). Then, ALJs "will articulate" in their decisions

7

"how persuasive" they found each medical source's opinions.[7] *Id.* § 404.1520c(b); *see id.* § 404.1520c(b)(1). Supportability and consistency are "the most important" of the five persuasiveness factors. *Id.* § 404.1520c(b)(2). Accordingly, ALJs "will explain" in their decisions "how [they] considered the supportability and consistency factors." *Id.* "Supportability is the degree to which a provider supports their opinion with relevant, objective medical evidence and explanation, and consistency is the degree to which a provider's opinion is consistent with the evidence of other medical and non-medical sources in the record." *Oakes v. Kijakazi*, 70 F.4th 207, 212 (4th Cir. 2023) (citing 20 C.F.R. § 404.1520c(c)(1)–(2)). "Supportability and consistency are distinct legal concepts," so ALJs "must adequately explain how [they] considered *both* factors." *Daryl R. v. O'Malley*, No. 5:23cv59, 2024 WL 3649033, at *4 n.4 (W.D. Va. Aug. 5, 2024) (citing *Oakes*, 70 F.4th at 212); *accord Drumgold v. Comm'r of Soc. Sec.*, 144 F.4th 596, 605 (4th Cir. 2025).

"Like the ultimate determination that a claimant has or lacks residual functional capacity, [the Court] review[s] the subsidiary determination that a medical opinion has or lacks supportability or consistency for substantial evidence." *Drumgold*, 144 F.4th at 606. Thus, where "medical sources arguably point in different directions," the Court will not "substitute [its] judgment for the ALJ's" in evaluating the persuasiveness of the sources' conflicting opinions. *Id.* at 605 (cleaned up). Nevertheless, the ALJ must build an accurate and logical bridge between the evidence, her conclusions about the persuasiveness of medical opinions, and her RFC finding. *See Oakes*, 70 F.4th at 212–214; *Monroe*, 826 F.3d at 189. The ALJ's explanation of how she considered the supportability and consistency factors should allow the Court "to trace the path of

---

[7] If a medical source provides multiple medical opinions, ALJs need not "articulate how [they] considered each medical opinion . . . individually." 20 C.F.R. § 404.1520c(b)(1). Instead, ALJs "will articulate how [they] considered the medical opinions . . . from that medical source together in a single analysis." *Id.*

8

[the ALJ's] reasoning." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5858, 2017 WL 168819 (Jan. 18, 2017). Remand is appropriate when the Court is "'left to guess' as to how the ALJ reached her evaluation of the conflicting medical opinions in light of the record evidence." *Testamark v. Berryhill*, 736 F. App'x 395, 398 (4th Cir. 2018) (quoting *Mascio*, 780 F.3d at 638); *see Drumgold*, 144 F.4th at 605 ("Missing analysis makes it impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings." (quotation marks omitted)). Conversely, the Court should affirm the decision when "the ALJ reasonably assessed the persuasiveness of [each medical source's opinions] based on [the opinions'] supportability and consistency." *Drumgold*, 144 F.4th at 605.

## B.    *Medical Opinions & the ALJ's Evaluations*

In determining Lloyd's RFC, ALJ Munday evaluated the opinions of four medical sources, all of whom spoke to Lloyd's sitting and standing capacities. *See* R. 34–37 (citing R. 81–86, 90–95, 357–60, 362–70, 690–97, 1273, 1287–88, 1295, 1410–12, 1487–88). First, ALJ Munday evaluated the medical opinions of the DDS medical consultants who reviewed Lloyd's claim in 2022. *See* R. 34–35 (citing R. 81–86, 90–95). On initial consideration, Bert Spetzler, M.D., concluded that Lloyd could sit for about six hours and stand for about six hours in an eight-hour workday. R. 85. He based his conclusion on evidence including Lloyd's complaints of pain, certain MRIs showing "mild to moderate spondylosis with associated mild thecal sac and neural foraminal narrowing" and "mild to moderate neuroforaminal narrowing at L3-4 and L4-S1," and certain physical examination findings of body mass index score of 36, normal heart function, normal neurological function, and normal gait. *Id.*; *see* R. 82. On reconsideration, Richard Surrusco, M.D., considering the same information as Dr. Spetzler, *see* R. 95 (noting that the "new evidence" on reconsideration "show[ed] no significant changes"), concluded that a

limitation to four hours of standing in an eight-hour workday was more appropriate considering "[a] functional exam from 2020 [that was] notable for limiting [Lloyd] to sedentary work" and Lloyd's "obesity, sleep apnea and subjective knee pain (and history of right knee surgery)." R. 95. He also found that Lloyd could sit for six hours. *Id.* ALJ Munday found Dr. Spetzler's opinion "partially persuasive" and Dr. Surrusco's opinion "generally persuasive." R. 35. Her RFC finding mirrors Dr. Surrusco's proposed limitations. *Compare* R. 94–95, *with* R. 22. ALJ Munday explained that "while [the DSS] consultants did not examine or treat [Lloyd], they had the chance to review some of [his] treatment record," and she emphasized that Dr. Surrusco reviewed "recently submitted records." R. 34. She found that the consultants "generally supported their findings with references to" certain "spinal imaging studies," "reported activities and headache complaints," and findings of "deficits on exams." *Id.* She also found that Dr. Surrusco's limitation to four hours of standing was "more consistent with [Lloyd's] gait antalgia noted at recent neurology exams with some decreased extremity weakness and reflexes." R. 34–35 (citing R. 1597–1607, 1715–25, 1777–86).

Next, ALJ Munday considered two functional capacity evaluations completed by kinesiotherapist Carlos Moffett and co-signed by Dr. Tatineni. *See* R. 35–36 (citing R. 362–70, 690–97). On November 24, 2020, Mr. Moffett concluded that Lloyd was "able to [do sedentary] work full time for up to 8 hours per day while taking into account his need to alternate sitting and standing," as Lloyd was "unable to sit at least 2 hours at one time." R. 362; *see also* R. 364, 366, 370 (concluding that Lloyd was capable of frequent sitting, occasional standing, and occasional walking). Throughout that day's exam, Lloyd "s[at] for a total of 1 hour and 15 minutes," "st[ood] for a total of 32 minutes" and "before requiring a change of position . . . st[ood] for 35 minutes at one time." R. 370. Lloyd performed walking testing "at an average pace" and his

10

"stride pattern was even," but he "exhibited a right antalgic gait pattern" and "a pain behavior of holding during fast walking." R. 366–67. Lloyd had "good erect posture with even shoulder, non-antalgic" while sitting and "slight forward head motion, increase[d] lumbar lordotic curvature, bilateral knee slightly flexed [and] foot supinated bilaterally" while standing. R. 364. Mr. Moffett found that Lloyd had some limited cervical and lumbar range of motion. *See* R. 365.

On January 13, 2022, Mr. Moffett concluded that Lloyd was unable to return to his past work as a custodian, R. 690, without "modifications or restricted duty" because of "decrease[d] strength, limited mobility of the lumbar spine . . . , and limited standing/walking tolerance," R. 691. *See also* R. 692, 695, 697 (concluding that Lloyd was capable of frequent sitting, occasional standing, and occasional walking). Throughout the evaluation, Lloyd "s[at] for a total of 1 hour and 23 minutes," "st[ood] for a total of 13 minutes," and "before requiring a change of position . . . st[ood] for a total of 55 minutes." R. 697. Lloyd performed walking testing "at an average pace," his "stride pattern was even, progressively becoming more antalgic secondary to increase[d] lower back pain," and "he exhibited increase[d] right antalgic gait pattern" and "a pain behavior of holding during fast paced walking." R. 695. Lloyd's sitting and standing posture remained the same as at the November 2020 evaluation. *Compare* R. 692, *with* R. 364. Mr. Moffett again found some limited cervical and lumbar range of motion, and he also noted "bilateral hamstring tightness" and "grossly 4/5" bilateral lower body muscle strength. *See* R. 693.

ALJ Munday concluded that Mr. Moffett's "opinions are less persuasive, for while they are supported by Mr. Moffett's one-time exams of the claimant, they are not fully consistent with the overall objective medical evidence of record." R. 36. She explained that "while Mr. Moffett had the chance to review some of [Lloyd's] treatment records and to examine [Lloyd], he did not

regularly treat [Lloyd]." R. 35. She found that "Mr. Moffett's findings are generally supported by his own exams of [Lloyd], which showed limited spine and knee movement, weakness in all extremities, . . . some gait antalgia, slow bending pace, limited squatting and kneeling, no tolerance for crawling, limited lifting due to pain, and limited stair climbing and standing." *Id.* (citing R. 362–70, 690–97). However, ALJ Munday found that "these severe restrictions are not fully consistent with [Lloyd's] only mild to moderate deficits on spine imaging studies," *id.* (citing R. 508–12, 516–18, 521–23); "normal foot strength, range of motion and sensation at podiatry exams in 2022," *id.* (citing R. 1498–1501, 1612–15); and "conservative treatment of medications" and topical analgesics, R. 35–36 (citing R. 448–57, 478–86, 498–504, 673–81, 1190–94, 1255–60, 1274–82, 1292–1300, 1421–22, 1432–40, 1446–54, 1468–75, 1478–86, 1494–98, 1501–10, 1536–45, 1559–66, 1580–89, 1630–40).

Finally, ALJ Munday evaluated several work restriction forms and notes and a medical source statement completed by Dr. Tatineni. *See* R. 36–37 (citing R. 357–60, 1273, 1277, 1287–88, 1295, 1410–12, 1487). On October 6, 2020, Dr. Tatineni completed a work restriction form stating that Lloyd "was under [her] care and unable to work" as a custodian from October 6 through October 27. R. 1287–88. On the same form, she indicated that Lloyd could return to "light duty" work on October 7 and noted that "light duty" included no lifting, bending, pushing, or pulling activities. R. 1288. On October 13, 2020, Dr. Tatineni completed a work restriction form indicating that Lloyd could return for "light duty" work on October 21 with no lifting, bending, pushing, or pulling and then resume "regular duties" on October 30. R. 1273. The same day, she noted in Lloyd's records that he was given a "[w]ork excuse with light duty restrictions for 3 weeks until seen by [a kinesiotherapist]" for a "consult for job modifications." R. 1295. On October 20, 2020, she reiterated in Lloyd's medical records that he was "given [a] work excuse

12

with light restrictions as discussed." R. 1277. On November 6, 2020, Dr. Tatineni completed a work restriction form stating that Lloyd was "under [her] care and unable to work with his chronic low back pain," as he was "being evaluated for his chronic low back pain at the VA." R. 1410. On the form, she indicated that Lloyd could return for "light duty" on October 30 with no lifting, bending, pushing, or pulling and resume "regular duties" on November 25. *Id.*

On April 28, 2021, Dr. Tatineni wrote a work restriction letter stating that Lloyd was "under [her] care for his chronic medical conditions including chronic back pain" and that he had been "having chronic back pain [for] 9 years" and "undergoing treatment" at the medical center where Dr. Tatineni worked throughout that time. R. 1487. She indicated that Lloyd had "been on light duty restrictions for . . . his ongoing chronic low back pain in the past" and that he had "appointments scheduled for treatment of his chronic back pain" at the time the letter was written. *Id.* Dr. Tatineni included instructions to "review attached papers . . . from [a] [k]inesiotherapy specialist regarding [Lloyd's] accommodations for work and light duty restrictions/limitations." *Id.*

On October 13, 2021, Dr. Tatineni completed the medical source statement at issue in Lloyd's appeal. *See* R. 357–60. Dr. Tatineni noted that she had been treating Lloyd for chronic lower back and neck pain and migraines for "several years." R. 357. She described Lloyd's symptoms as "[complained-of] lower back pain/neck pain with radiation to both hands, feet on and off with tingling/numbness and fatigue." *Id.* She noted that Lloyd reported "burning/sharp/shooting pain in [his] neck and lower back" that was a "7/10" on the "pain scale" and exacerbated by "prolonged standing/walking." *Id.* Dr. Tatineni also described her objective findings on examination, including "slight[ly] restricted range of motion" in the neck, "moderate to severe[ly] restricted range of motion" in the back, "straight leg rise test negative," and "lower

13

extremities range of motion n[ormal]." *Id.* She indicated that Lloyd was not a malingerer. R. 358. Dr. Tatineni opined that Lloyd "need[ed] a job that permits shifting positions *at will* from sitting, standing, or walking," that he was limited to "low stress jobs," and that he was "likely to be absent from work as a result of [his] impairments or treatment . . . [a]bout three days per month." R. 358–59. Dr. Tatineni did not identify the total number of hours that Lloyd could sit or stand/walk during an eight-hour workday. *See* R. 358. On this same page where she indicated that Lloyd had a sit-stand limitation, however, she wrote in the margin "see attached papers." *Id.* At the end of the medical source statement, Dr. Tatineni attached Mr. Moffett's November 2020 functional capacity evaluation that she had co-signed. *See* R. 362–70.

ALJ Munday evaluated all of Dr. Tatineni's medical opinions—including her proposed sit/stand limitation—in a single analysis. *See* R. 36–37. That analysis reads in full:

> First, the undersigned notes that while Dr. Tatineni has a regular treating relationship with the clamant, she is a primary care provider and not an orthopedic, pain management, rheumatology, or neurology specialist. Further, for most of these opinions, she did not provide support for her restrictions and just referenced the claimant's subjective pain complaints. In addition, while [she] noted some objective signs to support her restrictions in October 2021, they do not support such severe absence restrictions, particularly given that she admitted the claimant had normal extremity range of motion with negative straight leg raise testing on exams [R. 357–60]. Her own contemporaneous treatment records do not support these restrictions, particularly as the no bending, lifting, pushing, and pulling limitations are not supported by the claimant's typically normal extremity range of motion and strength, normal gait, and intact coordination at primary care exams with conservative treatment of primarily medications [R. 448–57, 478–86, 498–504, 673–681, 1190–94, 1255–60, 1274–82, 1292–1300, 1421–22, 1432–40, 1446–54, 1468–75, 1478–86, 1494–98, 1501–10, 1536–45, 1559–66, 1580–89, 1630–40]. Last, Dr. Tatineni's severe absenteeism, lifting, bending, pushing, and pulling limitations are not fully consistent with the claimant's mild to moderate deficits on spine imaging studies [R. 508–12, 516–18, 521–23]; his normal extremity range of motion with no joint swelling at his rheumatology exam [R. 1400–06]; and his normal foot strength, range of motion, and sensation at podiatry exams in 2022 [R. 1498–1501, 1612–15].

R. 36–37. "Therefore," she found that Dr. Tatineni's medical opinions were "not persuasive, as they are not supported by Dr. Tatineni's contemporaneous treatment visits and are not consistent with the overall medical evidence of record.

As relevant here, ALJ Munday's RFC finding restricts Lloyd to "light work . . . except standing/walking four hours in an eight-hour workday" with some limitations on postural activities and workplace environments and no limitation on sitting. R. 22. It does not adopt Dr. Tatineni's proposed sit-stand limitation. *Id.*

C.      *Analysis*

ALJ Munday's evaluation of Dr. Tatineni's medical opinions is not supported by substantial evidence and does not build an accurate and logical bridge from the evidence to her conclusions. *See* 20 C.F.R. § 404.1520c(b)(2); *Drumgold*, 144 F.4th at 604–05. Critically, the ALJ failed to "explain how [she] considered the supportability and consistency" of the sit-stand limitation in Dr. Tatineni's medical source statement. *See* 20 C.F.R. § 404.1520c(b)(2). Indeed, the ALJ did not mention the sit-stand limitation at all in discussing the persuasiveness of Dr. Tatineni's opinions. *See* R. 36–37. The ALJ instead focused exclusively on Dr. Tatineni's proposed absenteeism, lifting, bending, pushing, and pulling limitations. *See id.* "While it was not necessary for the ALJ to meticulously juxtapose each of Dr. [Tatineni's] opinions with each piece of medical evidence in the record, *the regulations do require [an] ALJ[] to articulate how relevant evidence, especially relevant countervailing evidence, weighed in [her] decision*." *Paul B. v. Kijakazi*, No. 6:20cv78, 2022 WL 989242, at *4 (W.D. Va. Mar. 31, 2022) (emphasis added) (citing 20 C.F.R. 404.1520c(b)(2)) (Moon, J.). "A contrary rule would leave reviewing courts with no way to trace the path of the ALJ's reasoning, rendering meaningful review impossible." *Id.*; *see* 82 Fed. Reg. 5844, 5858 (explaining that 20 C.F.R. § 404.1520c's

articulation requirement "will allow a subsequent reviewer to trace the path of [the ALJ's] reasoning, and will not impede . . . a court's ability to review [the] final decision"). Moreover, if an ALJ's "RFC assessment conflicts with an opinion from a medical source, the [ALJ] *must explain* why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7 (emphasis added); *see Gloria M. v. Kijikazi*, No. 4:20cv44, 2022 WL 909043, at *7 (W.D. Va. Mar. 28, 2022).

ALJ Munday discussed the "supportability" and "consistency" of Dr. Tatineni's opinions to some extent, but she never explained how she considered substantial evidence in the record relevant to the sit-stand limitation or why she declined to adopt the limitation in her RFC finding. Thus, the Court cannot say that the ALJ's decision is supported by substantial evidence because the Court is "left to guess about how the ALJ arrived at [her] conclusion" that Dr. Tatineni's opinion is unpersuasive and that Lloyd is capable of standing for four hours in a workday with no restriction on sitting. *Mascio*, 780 F.3d at 637. *Cf. Johnson*, 2016 WL 5338530, at *7 (remanding where the record contained "conflicting evidence regarding plaintiff's alleged sit-stand limitation" but the ALJ "did not address the part of [a medical source's] report indicating that the plaintiff can walk, stand, and sit each in only 30 minute increments" or "receive evidence from a vocational expert to determine whether jobs [were] available in the national economy that someone could perform in light of plaintiff's alleged sit-stand limitation").

ALJ Munday's evaluation of Dr. Tatineni's opinion is deficient at each step. First, the ALJ explained that "[a]lthough Dr. Tatineni ha[d] a regular treating relationship with the claimant, she is a primary care provider and not an orthopedic, pain management, rheumatology, or neurology specialist." R. 36. As Lloyd notes, this point appears "not relevant" and inconsistent with the ALJ's conclusion that the DDS consultants' opinions were persuasive even though the

16

ALJ did not find the DDS consultants had medical specialty in those areas or *any* treating relationship with Lloyd.[8] *See* Pl.'s Br. 6 (citing R. 34–35); 20 C.F.R. § 404.1520c(c)(3)–(4). The ALJ did not explain whether and, if so, why this reason diminished the persuasiveness of Dr. Tatineni's opinions, but not those of the DDS reviewing physicians. The ALJ's seemingly inconsistent reasoning undermines the reasonableness of her analysis. *Cf. Patterson*, 846 F.3d at 663 ("Show your work. The ALJ did not do so here, and this error rendered his decision unreviewable."); *Testamark*, 736 F. App'x at 399 ("Absent more thorough and well-reasoned explanation, we cannot conduct meaningful judicial review.").

As to supportability, ALJ Munday first found that that, "for most of these opinions, [Dr. Tatineni] did not provide support for her restrictions and just referenced the claimant's subjective pain complaints." R. 36. That observation does not apply to Dr. Tatineni's October 2021 medical source statement. Indeed, in the very next sentence, the ALJ stated that "while [Dr. Tatineni] noted some *objective signs* to support her restrictions in October 2021, they do not support such severe *absence restrictions*, particularly given that she admitted [Lloyd] had normal extremity range of motion with negative straight leg raise testing on exams." R. 36 (emphasis added) (citing R. 357–60). Thus, the ALJ acknowledged that Dr. Tatineni presented objective findings to support her medical source statement, but the ALJ determined that those objective findings did not support only Dr. Tatineni's absence restrictions. She did not address whether the objective findings supported Dr. Tatineni's sit-stand limitation.

---

[8] Notably, ALJ Munday made the same analytical error in evaluating Mr. Moffett's opinions. She concluded that Mr. Moffett's opinions were "less persuasive" than those of the DDS consultants in part because, "while Mr. Moffett had the chance to review some of [Lloyd's] treatment records and to examine [Lloyd], he did not regularly treat [Lloyd]." R. 35–36. But the DDS consultants did not regularly treat Lloyd either. Nor did they conduct extensive evaluations of his functional capacities, as Mr. Moffett did. *Compare* R. 81–82, 90–91, *with* R. 362–70, 690–97.

Next, ALJ Munday found that Dr. Tatineni's "own contemporaneous treatment records do not support these restrictions, particularly as the *no bending, lifting, pushing, and pulling limitations* are not supported by the claimant's typically normal extremity range of motion and strength, normal gait, and intact coordination at primary care exams with conservative treatment of primarily medications." R. 36–37 (emphasis added) (citing R. 357–60, 448–57, 478–86, 498–504, 673–81, 1190–94, 1255–60, 1274–82, 1292–1300, 1421–22, 1432–40, 1446–54, 1468–75, 1478–86, 1494–97, 1502–10, 1536–45, 1559–66, 1580–89, 1630–40). Here, the ALJ focused on the bending, lifting, pushing, and pulling limitations in Dr. Tatineni's work restriction forms. *See* R. 1273, 1288, 1410. Again, the ALJ did not mention the sit-stand limitation in her one-sentence discussion of Dr. Tatineni's treatment notes. As Lloyd correctly points out, the applicable regulation "requires an ALJ to consider the objective medical evidence and supporting explanation *presented by* the medical source." Pl.'s Reply Br. 2 (cleaned up) (emphasis added); *see* 20 C.F.R. § 404.1520c(c)(1) (defining supportability in terms of the "objective medical evidence and supporting explanation presented by the medical source"). The Court agrees with Lloyd that "it appears the ALJ fail[ed] to recognize the evidentiary basis for Dr. Tatineni's October 13, 2021 opinion" that Lloyd was limited to work that permits shifting positions at will between sitting and standing. *See* Pl.'s Reply Br. 2; *see also* R. 358, 362–70. On two occasions, the ALJ mentioned Dr. Tatineni's "contemporaneous treatment records." R. 36–37. However, the ALJ never discussed whether the sit-stand limitation was supported by Dr. Tatineni's clinical findings of restricted range of motion in the neck and lower back that she presented in her medical source statement, R. 357, or whether it was supported by the extensive findings as to Lloyd's sitting and standing capacities in the functional capacity evaluation that Dr. Tatineni

18

cited in and attached to the statement,[9] s*ee* R. 362, 364–67, 370. The ALJ's failure to explain how she considered the objective evidence Dr. Tatineni presented to support her opined sit-stand limitation requires remand. *See Carlos F. v. Kijakazi*, Civ. No. 22-2049, 2023 WL 3293086, at *4 (D. Md. May 5, 2023) (remanding where the ALJ's "analysis sheds no light on whether the explanations and evidence provided by Dr. Kudelko in his June 7, 2021, medical source statement supported the statement's conclusions"); *Mary W. v. Comm'r of Soc. Sec.*, No. 2:20cv5523, 2022 WL 202764, *10 (S.D. Ohio Jan. 24, 2022) ("For the ALJ to have adequately discussed the supportability of the State agency psychologists' opinions, the ALJ needed to evaluate what the State agency psychologists said they based their opinions on – not simply how their opinions compared to the record evidence as a whole.").

As to consistency, ALJ Munday found that "Dr. Tatineni's severe *absenteeism, lifting, bending, pushing, and pulling limitations* are not fully consistent with the claimant's mild to moderate deficits on spine imaging studies; his normal extremity range of motion with no joint swelling at his rheumatology exam; and his normal foot strength, range of motion, and sensation at podiatry exams in 2022." R. 37 (emphasis added) (citing R. 508–12, 516–18, 521–23, 1400–06, 1498–1501, 1612–15). Here, again, the ALJ addressed limitations other than the sit-stand limitation. Granted, the ALJ then concluded her evaluation of Dr. Tatineni's opinions by stating generally that "these opinions are not persuasive, as they are not . . . consistent with the overall

---

[9] ALJ Munday did not even mention the contents of the "attached papers" that Dr. Tatineni references in her medical source statement. *See* R. 36 (noting only that Dr. Tatineni "referenced 'attached papers' regarding other exertional restrictions"). As Lloyd notes, this is striking because the ALJ found the very same November 2020 functional capacity evaluation was "generally supported" by objective findings when she evaluated it in the context of Mr. Moffett's opinions. Pl.'s Br. 7 (quoting R. 35). *Cf. Warren v. Astrue*, No. 2:08cv3, 2008 WL 3285756, at *11 (W.D. Va. Aug. 8, 2008) ("The ALJ's decision cannot be supported by substantial evidence when he fails to adequately explain his rationale for rejecting the opinions of those whom he otherwise gave great weight to in arriving at his decision."). "[I]f the ALJ appears, without stating a reason, to have . . . ignored evidence altogether, a remand or reversal may be necessary." *Hancock v. Barnhart*, 206 F. Supp. 2d 757, 764 (W.D. Va. 2002).

medical evidence of record." R. 37. The Commissioner urges the Court to accept this "*general conclusion* that Dr. Tatineni's opined limitations were far greater than one would expect based on the entire record" as sufficient reasoning for implicitly rejecting the sit-stand limitation. Def.'s Br. 12 (emphasis added) (citing R. 37). But the Court cannot do so. As the Court has discussed, "the ALJ must analyze the consistency and supportability of medical opinions by evaluating the relevant medical evidence, *including countervailing evidence*, and by connecting the evidence to [her] ultimate conclusion." *Paul B.*, 2022 WL 989242, at *4 (emphasis added); *see, e.g.*, *Stephen R. v. O'Malley*, No. 21-2292, 2024 WL 3508155, at *4–5 (4th Cir. July 23, 2024) (finding the ALJ's conclusion that medical opinions were unpersuasive "not supported by substantial evidence" where the ALJ evaluated consistency based on an "impermissibly selective" reading of the record that "ignored countervailing evidence" (citing *Lewis*, 858 F.3d at 869)); *Linger v. Comm'r of Soc. Sec.*, No. 22-2192, 2025 WL 40548, at *4, 6 (4th Cir. Jan. 7, 2025) (finding the ALJ "failed to support his findings with substantial evidence" where the ALJ found "McCullough's opinion unpersuasive and 'not fully consistent with the totality of the objective record' because 'the record showed Linger was able to maintain employment as a laborer in spite of' his mental issues and was 'able to perform many daily activities without significant issues,'" but "the ALJ fails to reconcile this finding with Dr. Goudy's opinion, which is much similar to Dr. McCullough's, as well as Keener's affidavit which highlighted Linger had difficulty following instructions at work" (alterations omitted)).

Here, Lloyd points to significant evidence in the record "consistent with Dr. Tatineni's opinion of a need to shift positions at will from sitting, standing, or walking." Pl.'s Br. 8. For example, at an August 2021 physical therapy appointment, examination revealed decreased lower extremity flexibility, abnormal gait mechanics, and decreased core and lower extremity

strength. *Id.* (citing R. 402). At an October 2021 physical therapy appointment, examination revealed decreased stride length bilaterally, limited lumbar range of motion, decreased hip flexor strength bilaterally, positive slump test, and positive straight leg raise bilaterally. *Id.* at 9 (citing R. 372–73). At a January 2022 physical therapy appointment, examination revealed decreased lower extremity strength, limited lumbar range of motion, limited cervical range of motion, and positive straight leg raise bilaterally. *Id.* (citing R. 685–86). At an October 2022 physical therapy appointment, examination revealed decreased stride length bilaterally, decreased hip flexor strength bilaterally, positive slump test, and positive straight leg raise bilaterally, and his physical therapist noted that "[s]itting and standing tolerance remain low with inability to sit or stand greater than an hour." *Id.* (quoting R. 1108–09). In December 2022, Lloyd was discharged from physical therapy because of continued pain and poor response. *Id.* (citing R. 1044). At neurology appointments in November 2022, March 2023, and July 2023, examinations consistently revealed decreased lower extremity strength limited by pain and slightly antalgic gait. *Id.* (citing R. 1599–1600, 1718, 1779). At a physical therapy appointment in June and July 2023, examinations revealed limited lumbar range of motion and decreased hip strength, with certain metrics as low as 3/5. *Id.* at 10 (citing R. 1789, 1815). These findings of objective deficits were accompanied by consistent complaints of lower back and neck pain exacerbated by prolonged periods of sitting and/or standing. *See id* at 8–10*; see also* Pl.'s Reply Br. 3 (citing R. 372, 478, 536, 682, 1080, 1204, 1220, 1358). Dr. Tatineni cited many of the same abnormal findings to support her medical opinion. R. 357–58; *see* 20 C.F.R. § 404.1520c(c)(2) ("The more consistent a medical opinion(s) . . . is with the evidence from other medical and nonmedical sources in the claim, the more persuasive the medial opinions . . . will be.").

The Commissioner does not dispute that the ALJ failed to address this evidence consistent with a sit-stand limitation in her evaluation of Dr. Tatineni's opinions. Instead, the Commissioner emphasizes that the Court must read the decision as a whole and seems to suggest that the ALJ accounted for the consistency (or lack thereof) of the sit-stand limitation in her summary of medical records earlier in her decision. *See* Def.'s Br. 11–12. The Court cannot, as the Commissioner urges it to do, simply take note of the ALJ's summary of medical evidence earlier in her RFC analysis and find that the ALJ adequately "explain[ed]" how she considered the consistency of Dr. Tatineni's opined sit-stand limitation, 20 C.F.R. § 404.1520c(b)(2), much less "why that opinion was not adopted," SSR 96-8p, 1996 WL 374184, at *7. "This court cannot 'fill in the blanks for the ALJ' by finding substantial evidence supports the ALJ's evaluation of Dr. [Tatineni's] opinion when the ALJ did not even address the consistency factor" for Dr. Tatineni's opined sit-stand limitation. *Cantrell v. Kijakazi*, No. 2:21cv21, 2022 WL 3335778, at *10 (W.D. Va. Aug. 12, 2022) (quoting *Patterson*, 846 F.3d at 662); *see Fox v. Colvin*, 632 F. App'x 750, 755 (4th Cir. 2016) ("[I]t is not our role . . . to hypothesize the ALJ's justifications that would perhaps find support in the record."); *Patterson v. Bowen*, 839 F.2d 221, 225 n.1 (4th Cir. 1988) ("We must . . . affirm the ALJ's decision only upon the reasons he gave.").

Moreover, the ALJ's analysis in other parts of her decision does not fill the gaps in her reasoning. For example, the ALJ found Lloyd's statements that severe pain "limited his ability to stand, walk, or sit with need for regular breaks" were inconsistent with his reports of "engaging in a wide range of activities." R. 24. Yet, none of the activities the ALJ cited, *see id.* ("doing some chores, preparing simple meals, handling most personal care tasks, fishing, going shopping, and caring for his ailing parents"), are inconsistent with Dr. Tatineni's opinion that Lloyd required a sit-stand limitation. Additionally, after the ALJ summarized the medical

22

evidence of Lloyd's "spine disorder, knee arthritis, gout, and obesity," R. 29, she concluded that

mixed exam findings, imaging, and testing supported limiting him to light work with standing,

walking, and postural limitations, R. 31. The ALJ did not provide any analysis to show that she

considered a sit-stand limitation or any limitation related to sitting. *See generally Thomas v.*

*Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) ("[O]ur precedent makes clear that meaningful

review is frustrated when and ALJ goes straight from listing evidence to stating a conclusion.").

In sum, ALJ Munday did not adequately explain how she considered the supportability or

the consistency of Dr. Tatineni's opined sit-stand limitation as required by 20 C.F.R. §

404.1520c, which precludes this Court from tracing the ALJ's reasoning and reviewing RFC

finding for substantial evidence. "And because [the Court] cannot gauge the propriety of the

ALJ's RFC assessment, [it] cannot say that substantial evidence supports the ALJ's denial of

benefits." *Patterson*, 846 F.3d at 662. "Harmonizing conflicting evidence and bolstering

inconclusive findings requires credibility determinations that [this Court] cannot make; these

exercises fall outside our scope of review." *Id.*

Moreover, the ALJ's improper evaluation of Dr. Tatineni's medical opinion may have

been consequential. The ALJ found that Lloyd was not disabled based on the VE's testimony

that someone with Lloyd's RFC "could perform his job as a mortgage loan processor as

generally performed in the national economy and as actually performed." R. 37–38 (citing R.

76). However, the ALJ never asked the VE whether adding a sit-stand limitation to the RFC

would still allow the person to perform Lloyd's past job or, if not, whether the person

nonetheless could adjust to other work based this RFC and Lloyd's vocational factors. *See* R.

76–77. Had the ALJ properly evaluated Dr. Tatineni's opinion, found it persuasive, and included

the sit-stand limitation in her RFC finding, she might have elicited VE testimony establishing

23

Lloyd was disabled.[10] Therefore, remand is necessary so the ALJ can properly evaluate Dr. Tatineni's opinion as required by 20 C.F.R. § 404.1520c.

## V. Conclusion

For the foregoing reasons, I respectfully recommend that the presiding District Judge **REVERSE** the Commissioner's final decision, **REMAND** the matter under the fourth sentence of 42 U.S.C. § 405(g), and **DISMISS** this case from the Court's active docket.

### **Notice to Parties**

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14 day period, the Clerk is directed to transmit the record in this matter to the presiding District Judge.

The Clerk shall send certified copies of this Report and Recommendation to all counsel of record.

ENTER: March 6, 2026

---

[10] In the context of a step five denial, the Social Security Administration has explained that a person with a sit-stand limitation "is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work . . . or the prolonged standing or walking contemplated for most light work." SSR 83-12, 1983 WL 31253, at *4. Further, while "[t]here are some jobs in the national economy— typically professional and managerial ones—in which a person can sit or stand with a degree of choice[,] . . . most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain amount of time to accomplish a certain task." *Id.* In Lloyd's case, however, his "advanced age" would significantly affect his ability to adjust to other work available in the national economy. 20 C.F.R. § 404.1563(e); *see also id.* § 404.1568(d)(4).

Joel C. Hoppe
United States Magistrate Judge